**STATE of Missouri,
Plaintiff-Respondent,**

v.

**George Allen ISOM,
Defendant-Appellant.**

No. 44969.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 1, 1983.

James R. Hartenbach, St. Louis, for defendant-appellant.

Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

Defendant appeals from a conviction of manslaughter, § 565.005 RSMo Supp.1982, in a court tried case. He was sentenced to serve a term of five years for the shooting of Franklin D. Gann. Defendant testified and admitted the shooting, but contended that it was justifiable as a necessary act of self-defense.

On appeal, defendant argues: (1) the trial court erred in allowing a medical examiner to testify and give her opinion on matters outside the scope of her expertise; (2) the trial court failed to require the state to negate the defense of self-defense or justification beyond a reasonable doubt; and (3) there was insufficient competent evidence to support the verdict of guilt. We affirm.

■ We accord the trial court's findings the same deference as a jury verdict and will affirm if supported by substantial evidence. *State v. Trask,* 581 S.W.2d 417, 418 (Mo.App.1979); *State v. Sanderson,* 528 S.W.2d 527, 529 (Mo.App.1975). We consider as true the evidence most favorable to the state together with all reasonable inferences therefrom, disregarding evidence and inferences to the contrary. *State v. Smith,* 621 S.W.2d 94, 95 (Mo.App.1981); *State v. Ruff,* 618 S.W.2d 722, 723 (Mo.App.1981).

Viewed in the light most favorable to the state, the record disclosed that the shooting occurred at the victim's home while defend-

ant and a friend, Nova Walsh, were visiting. The victim's wife, Barbara Gann, and three of their children also were present. Defendant and Franklin Gann had been together most of the afternoon and evening and were friends. Defendant, who was distantly related to Barbara Gann, was almost seventy-two years old, five feet four inches tall, and weighed 145 pounds. Gann was forty-six years of age, was five feet eight inches tall, and weighed 185 pounds.

About 8:00 P.M. that evening, the parties were having a discussion while seated at the Gann's kitchen table, when defendant struck Mrs. Walsh. She fell under the table and was knocked unconscious. When Franklin Gann got up, approached defendant, and told him that he shouldn't have struck Mrs. Walsh, a dispute arose between the two men. Mrs. Gann and Mark Gann, her son, testified that the men scuffled on the floor and that defendant was on top of the victim, choking him. Mark and Mrs. Gann pulled defendant off of the victim, and then turned their attention to Mrs. Walsh.

The two men rose to their feet and Gann began walking towards defendant. Defendant warned Gann, "I'll shoot you Frank, I'll shoot you." Mark estimated that the men were three feet apart when defendant fired the first shot. Barbara Gann estimated the distance at ten inches. Both men fell to their knees and defendant shot Gann a second time from a distance of two feet according to Mark Gann, and four inches by Barbara Gann's testimony. Gann then fell on top of defendant and died shortly thereafter.

Defendant testified that Mrs. Walsh fell after hooking her foot around a chair and that Gann then lunged at him. Defendant stated that Gann punched him, and they began wrestling. They ended up in the living room, where Gann was on top of defendant, and Gann began to choke him. Defendant stated that he withdrew a gun from his right coat pocket and warned Gann to get off of him, and stop choking

him or he would shoot him. He then shot Gann twice. Defendant testified that he was afraid for his life.

A deputy sheriff, for the state, testified that defendant had red marks around the collarbone area, when the deputy saw him that night.

Defendant's first point concerns the testimony of the medical examiner, Dr. Case. Defense counsel stipulated to Dr. Case's qualifications as a medical examiner. She testified that at the autopsy, she found two gunshot wounds, one located on the left side of the chest, and the other in the left side of the abdomen. The path of both wounds was from left to right, from the front toward the back.

Dr. Case testified that there was no evidence of stippling or unburned gunpowder in the wounds, indicating distant wounds. In the case of a handgun, a distant wound would be about twelve inches (or more) while a distant wound for a rifle would be about eighteen inches (or more). Defendant objected to this testimony when Dr. Case stated that she was not a firearms expert. Dr. Case explained, however, that she was not a firearms expert for purposes of identifying the bullets, but that she was not speculating on the required distance for a firearm to deposit certain types of evidence, such as gunpowder, upon the body.

■ It is clear that the admission of expert testimony rests within the sound discretion of the trial court. *State v. Andrade,* 534 S.W.2d 595, 597 (Mo.App.1976). We find no abuse of discretion in the admission of Dr. Case's testimony. She was a qualified expert testifying in a familiar area, and was not speculating. Moreover, rules of exclusion of evidence are less strictly enforced in a court tried case than in a jury tried case on the assumption that the trial court will not be misled by irrelevant or incompetent evidence. *State v. Sisler,* 654 S.W.2d 220, 222 (Mo.App.1983); *State v. Mitchell,* 615 S.W.2d 446, 450 (Mo.App. 1981).

■ Defendant attempted to impeach Dr. Case's testimony by eliciting the fact that the clothing that Gann was wearing when he was shot did not accompany the body. Dr. Case acknowledged that clothing could affect the amount of stippling or gunpowder in the wound. Dr. Case stated, however, that with a close-up wound, even with clothing, there would be some unburned powder penetrating, and there was none here. We believe that any questions about Dr. Case's testimony go to its weight, not to its admissibility.

Defendant's second and third point essentially are that the state failed to present sufficient evidence to support the verdict and negate the defense of justification or self-defense.

The trial court found beyond a reasonable doubt that defendant caused Gann's death by shooting him and that the death was not a justifiable homicide. The court also found beyond a reasonable doubt that even if defendant was not the initial aggressor, defendant could not have reasonably believed that it was necessary to use deadly force to protect himself, nor, under all of the circumstances, could defendant have reasonably believed that he was in imminent danger of death or serious physical injury. We believe that the trial court's findings are supported by substantial evidence.

■ A criminal defendant has no burden on the issue of self-defense. Once the evidence, from whatever source raises self-defense, the burden rests on the state as an element of conviction to prove beyond a reasonable doubt that the homicide was not justified. *State v. Grier,* 609 S.W.2d 201, 203 (Mo.App.1980). The state and the defense presented evidence of two different versions of how Franklin Gann was killed, however. Since this was a court-tried case, the trial court resolves conflicts or inconsistencies in conflicting versions of events and its decision on the issue of credibility is binding on appeal. *State v. Tippett,* 588 S.W.2d 742, 743 (Mo.App.1979).

The trial court's findings that defendant could not reasonably have believed it was necessary to use deadly force or that he was in imminent danger of death or serious physical injury, *see* § 563.031 RSMo 1978, are consistent with the state's version of events. The trial court obviously resolved the inconsistencies between the two sides, as well as the deputy sheriff's statement that defendant had red marks around his collarbone, in favor of the state. We will not interfere with that determination.

■ The elements of self-defense are absence of aggression or provocation on the part of defendant, a necessity, real or apparent for defendant to employ deadly force to save himself from immediate danger of serious bodily injury or death, and reasonable cause for such belief. *State v. Miller,* 653 S.W.2d 222, 224 (Mo.App.1983). In addition, where, as here, defense of habitation is not involved, it must appear that the defendant did everything in his power consistent with his own safety, to avoid the danger and he must retreat if retreat is practicable. *State v. Ivicsics,* 604 S.W.2d 773, 776 (Mo.App.1980). Although according to Mark and Barbara Gann's testimony Franklin Gann was advancing toward defendant, defendant clearly had a practicable avenue of retreat, as he could have run out of the house. He clearly failed to do everything in his power to avoid the danger when he used deadly force. Something more than fear is required to justify such extreme conduct. Some affirmative action, gesture or communication by the person feared indicating the immediacy of danger, the inability to avoid or avert it, and the necessity to use deadly force as a last resort must be present. Fear of Gann's size in relation to defendant's size cannot alone justify a killing. *See State v. Jackson,* 522 S.W.2d 317, 319–20 (Mo.App.1975). We find that the trial court's determination that the killing was not justified was supported by substantial evidence.

■ As there was no legal justification, the conviction for manslaughter was

supported by substantial evidence. Manslaughter is a residuary homicide offense; an unintentional killing of another which did not occur in the commission of a dangerous felony. *State v. Guyton*, 635 S.W.2d 353, 358 (Mo.App.1982). *See* § 565.005.[1] The culpable mental state in manslaughter, not specifically mentioned in the statute, is satisfied by purposeful, knowing or reckless conduct. *See State v. Rideau*, 650 S.W.2d 675, 677 (Mo.App.1983); *State v. Cox*, 645 S.W.2d 33, 36 (Mo.App.1982). Although an intent to kill may exist, it is not an indispensible element of manslaughter. *State v. Chamineak*, 343 S.W.2d 153, 161 (Mo.1961); *State v. Rideau*, 650 S.W.2d at 677.

Mark Gann's testimony that the shooting was from a distance of two to three feet is consistent with Dr. Case's opinion that the wounds were distant wounds. All of the witnesses stated that they knew of no prior arguments between defendant and Franklin Gann. Although the lethal wound, the first shot, was to a vital part of the body—near the heart—defendant warned that he would shoot and stated that he shot Gann in the stomach. This evidence supports the conclusion that defendant intended to shoot but not necessarily to kill. There was, therefore sufficient competent evidence in the record to support a verdict of guilt, and the conviction is affirmed.

SIMON, P.J., and STEPHAN, J., concur.

---

1. Section 565.005 states: "Every killing of a human being by the act, procurement or culpable negligence of another, not declared by law to be murder or excusable or justifiable homicide, or vehicular manslaughter, shall be deemed manslaughter."