STATE of Missouri, Respondent,

v.

Michael H. VESTAL, Appellant.

No. 52035.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 24, 1987.

---

Gerald M. Dunne, St. Louis, for appellant.

William L. Webster, Atty. Gen., Jatha B. Sadowski, Asst. Atty. Gen., Jefferson City, for respondent.

SATZ, Presiding Judge.

In a jury waived case, defendant, Michael Vestal was convicted of four Counts of fraudulent use of a credit device, § 570.130 RSMo. 1979.[1] The court sentenced him to six months imprisonment on Count I and suspended imposition of sentence on the remaining three Counts. Defendant appeals. We affirm.

Defendant contends the state failed to make a submissible case. We disagree.

On appeal, the state only has to show there was sufficient evidence for the fact finder to conclude defendant's guilt beyond a reasonable doubt. *E.g., State v. Turner*, 623 S.W.2d 4, 6 (Mo. banc 1981), cert. denied, 456 U.S. 931, 102 S.Ct. 1982, 72 L.Ed.2d 448 (1982).

We must view the evidence in the light most favorable to the state, and give deference to the trial court's findings if supported by substantial evidence. *See State v. Harris*, 710 S.W.2d 324, 325 (Mo.App. 1986); *State v. Isom*, 660 S.W.2d 739, 740 (Mo.App.1983).

Accordingly, the facts are as follows:

From the time he received his Mastercard credit card in April, 1979, through August, 1982, defendant never exceeded his $500.00 credit limit by more than $120.00 and exceeded his $500.00 limit by more than $100.00 only once. Defendant's $500.00 credit limit remained unchanged

---

**1.** Section 570.130 RSMo. (1979) states:

1. A person commits the crime of fraudulent *use* of a credit device if *he uses* a credit device for the purpose of obtaining services or property, knowing that:

(1) The device is stolen, fictitious or forged; or

(2) The device has been revoked or cancelled; or

(3) For any other reason his use of the device is unauthorized. (Emphasis added)

2. Fraudulent use of credit device is a Class A Misdemeanor unless the value of the property or services obtained or sought to be obtained within any thirty-day period is one hundred fifty dollars or more, in which case fraudulent use of a credit device is a Class D felony.

over the entire history of the account. In September, 1982, defendant exceeded his credit limit by $221.11; in October, 1982, by $8,202.66; and in November, 1982, by $13,359.72. On September 9, 1982, Commerce Bank sent a statement to defendant containing the following message: "Your account will be revoked unless the account past due is received within 15 days from the date of this statement". There was no evidence that defendant ever received the statement. Commerce Bank never received payment. The October, 1982 statement confirmed the revocation of defendant's account. Between September 9, 1982 and September 27, 1982, defendant received several letters warning him to restrict charges and make payment. Finally, on September 27, 1982, Commerce Bank sent a letter notifying defendant of the cancellation of his credit card.

At trial, the evidence showed defendant made his last payment on July 12, 1982 for $24.00. Also, from August 3, 1982 through October 22, 1982, over 400 transactions transpired, and only one exceeded $50.00. Merchants are supposed to call for authorization on all purchases over $50.00. In addition, defendant made multiple purchases from the same store on the same date. Testimony at trial showed the value of merchandise purchased at the two Target stores on September 25, 1982, was in excess of $200.00.[2]

On October 22, 1982, police observed defendant and a woman (McNeilly) enter Red Lobster Restaurant. After eating, McNeilly paid the bill using defendant's Mastercard. Later that evening, police arrested defendant and McNeilly, seized the credit cards from defendant's wallet which was located in McNeilly's purse and lawfully appropriated merchandise allegedly acquired with the credit card. Police also seized a portion of the August Mastercard bill, a booklet published by Mastercard indicating the numbers of overdrawn or stolen cards and numerous Mastercard sales drafts. The trial judge found defendant guilty on all four counts. This appeal followed.

■ Defendant first argues his Mastercard was not cancelled or revoked until September 28, 1982, two days after the alleged offense. He focuses his argument on the September 9 letter which stated: "Your account will be revoked unless the account past due is received within 15 days from the date of this statement." (Emphasis added) Defendant contends this language means revocation will occur sometime in the future, above and beyond the fifteen days. He points to the letter dated September 27 as being the first mention of actual revocation.

Defendant's first argument is unconvincing. The September 9 statement was unambiguous and meant defendant's privileges would be revoked in 15 days unless payment was received. There was nothing in the letter to lead the recipient into believing there would be any further notification. Thus, the September 27 letter constituted nothing more than a confirmation of the past revocation.

■ Defendant next argues that the bank consistently allowed him to maintain a balance in excess of his credit limit. He contends this action by the bank either authorized him to exceed his credit limit or led him to believe he could do so.

Assuming the bank's actions allowed defendant to exceed his credit limit, defendant's position is nevertheless untenable. The September 9 letter expressly informed defendant that the use of his credit card was unauthorized as of September 24. Also, even if we disregarded the letter, the trial judge could reasonably have concluded that this defendant was not authorized to exceed his $500 credit limit by over $13,000, and that this defendant did not believe he was authorized to do so.

■ Defendant, relying on State v. Nations, 676 S.W.2d 282 (Mo.App.1984), contends that we must find he had actual knowledge that the use of his credit card was unauthorized. In Nations, defendant hired a minor to "dance for tips". The evidence established the defendant was ar-

---

2. The retail value of the merchandise purchased was $43.89, $44.31, $43.93, $36.49, and $47.06.

rested the same day the minor had been hired, and that the minor had no identification. Viewing the evidence most favorable to the state, this court concluded that at best defendant, Nations, did not know or refused to learn the child's age and therefore the state failed to prove actual knowledge. *Nations* at 285.

The issue then is whether there was sufficient evidence from which the trial court could conclude that this defendant possessed actual knowledge. In the instant case, the evidence showed: (1) a letter was sent informing defendant his account would be revoked on September 24 if payment was not received; (2) payment was not received; (3) defendant made over 400 transactions with only one exceeding the $50.00 limit which triggers an authorization check; (4) defendant made multiple purchases at the same store on the same date; and (5) police seized a portion of the August bill, numerous sales drafts and a booklet published by Mastercard indicating the account numbers of overdrawn or stolen cards. In short, there was ample evidence which enabled the fact finder to conclude this defendant possessed actual knowledge that the use of his credit card was unauthorized.

Defendant further argues that the evidence was insufficient to show he actually used the credit card on September 25 at the two Target Stores. We disagree.

 To make a submissible case based on circumstantial evidence, the circumstances and facts must be consistent with each other and the hypothesis of guilt. They must be inconsistent with defendant's innocence, but need not demonstrate the impossibility of innocence or conclusiveness of guilt. *See State v. Miller*, 692 S.W.2d 339, 340 (Mo.App.1985).

The facts and circumstances of this case are: defendant was issued a credit card; the credit card was used to make purchases at the two Target Stores; and the credit card was seized in defendant's presence, from defendant's wallet which was located in McNeilly's purse. The evidence that defendant actually used the credit card is sufficient to sustain a conviction.

Finally, defendant's argument that there was not any evidence that the value of the property was at least $150.00 is erroneous. The evidence shows the value of the merchandise purchased was $43.89, $44.31, $43.93, $36.49, $47.06, for a total of over $200.00.

In this case, there was sufficient evidence for the trial court to conclude defendant's guilt beyond a reasonable doubt. Therefore, the judgment of conviction is affirmed.

KELLY and CRIST, JJ., concur.